JUN 3 2026 am8:42
FILED - USDC - FLMD - OCA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RICHARD HARTMAN,
Plaintiff,

CASE NO. 5:25-cv-790-PRL

v.

REPUBLIC SERVICES OF FLORIDA,
LIMITED PARTNERSHIP d/b/a
REPUBLIC SERVICES OF TAMPA
Defendant,

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff Richard Hartman respectfully opposes Defendant Republic Services of Florida, Limited Partnership d/b/a Republic Services of Tampa's Motion to Dismiss the First Amended Complaint [D.E. 36].

### I. PRELIMINARY STATEMENT

1. Defendant's Motion to Dismiss is substantively identical to the motion it filed on January 21, 2026 [D.E. 14], which was mooted upon the filing of the First Amended Complaint.

2. Since March 24, 2026, discovery has produced sworn admissions, call logs, and verified interrogatory responses that affirmatively contradict each ground Defendant now re-raises.

3. The First Amended Complaint ("FAC") alleges in detail that Defendant placed at least forty-five prerecorded and automated calls, and three automated text messages, to Plaintiff's cellular telephone without his prior express consent, and continued to do so

1

even after receiving a written Cease and Desist Letter expressly revoking any consent and directing Defendant to "Stop calling me. Do not call me at any number, for any reason." Am. Compl. ¶¶ 11–13, 18–20, 27–32.

4. Taking these well-pleaded facts as true, the FAC states a claim under 47 U.S.C. § 227(b)(1)(A)(iii), alleges concrete injury-in-fact, and plausibly alleges willful or knowing violations. The Motion should be denied.

## II. LEGAL STANDARD

5. To survive a Rule 12(b)(6) motion, a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

6. At this stage, the Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor, and may not resolve factual disputes about consent, revocation, or Defendant's internal procedures.

7. Affirmative defenses—including consent—cannot be resolved on a motion to dismiss unless they appear conclusively on the face of the complaint. See Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984).

8. Because Plaintiff proceeds pro se, his pleadings must be construed liberally and held to a less stringent standard than those drafted by attorneys. Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

2

9. A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

10. Defendant's assertion that Plaintiff's allegations are conclusory must be evaluated against this standard—and, as shown below, fails even under the more demanding standard applicable to counseled parties.

### III. ARGUMENT

11. Defendant attacks the FAC on four grounds: standing, consent, alleged "conclusory" pleading, and revocation/willfulness.

12. Each argument fails as a matter of law or presents factual disputes that cannot be resolved on a Rule 12 motion.

**A. Plaintiff Adequately Alleges a Concrete Injury-in-Fact.**

13. Defendant's Rule 12(b)(1) challenge should be denied.

14. The FAC alleges that Defendant made at least forty-five unwanted calls to Plaintiff's cellular telephone using an artificial or prerecorded voice between June 2022 and December 2025, and sent three automated text messages after Plaintiff expressly revoked consent. Am. Compl. ¶¶ 18–20, 27–29.

15. Plaintiff alleges these unwanted calls and texts harmed him "by being a nuisance and an invasion of [his] privacy," "intruded upon [his] seclusion," "wasted [his] time," and caused "aggravation, indignation, and unwarranted stress." Am. Compl. ¶ 33.

3

16. Repeated unwanted prerecorded calls and automated messages to a consumer's personal cellular telephone that invade privacy, disturb seclusion, and waste time constitute concrete harm under Article III.

17. In Drazen v. Pinto, 74 F.4th 1336 (11th Cir. 2023) (en banc), the Eleventh Circuit unanimously held that receipt of a single unwanted automated call or text is sufficient to confer Article III standing under the TCPA.

18. The court grounded its analysis in the common-law tort of intrusion upon seclusion, reasoning that the harm associated with an unwanted text message shares a close relationship with the harm underlying that tort because both harms intrude into peace and quiet in a realm that is private and personal.

19. The court further noted that unwanted phone calls are among the privacy intrusions that give rise to liability for intrusion upon seclusion.

20. Drazen expressly overruled the prior panel decision in Salcedo v. Hanna, 936 F.3d 1162 (11th Cir. 2019).

21. Defendant attempts to limit Drazen to telemarketing calls, arguing that "informational" prerecorded calls cannot support standing.

22. That reading ignores Drazen's actual reasoning.

23. The court's analysis turned on the kind of harm—unwanted automated intrusion into private peace and quiet—not on whether the message content was telemarketing.

24. A prerecorded call buzzing a consumer's cellular telephone repeatedly over three years—regardless of message content—constitutes precisely the kind of intrusion Drazen identified as a concrete injury.

25. Plaintiff alleges forty-five such calls and three automated texts.

26. Defendant's primary standing case, Heres v. Medicredit, Inc., No. 23-CV-24815, 2024 WL 3291738 (S.D. Fla. July 3, 2024), is an FDCPA case involving a single debt collection letter.

27. The Heres court concluded that one letter, without more, was not enough for Article III injury under the FDCPA, but quoted Drazen and recognized that one or two unwanted phone calls or text messages can constitute a concrete injury under the TCPA.

28. Defendant thus cites a case that confirms Plaintiff has standing rather than one that undermines it.

29. The FDCPA and TCPA protect different interests and have different injury frameworks. The FDCPA focuses on misleading or abusive debt-collection communications, while the TCPA is a privacy statute aimed at restricting automated and prerecorded calls to consumers' phones without consent.

30. FDCPA standing decisions therefore do not control analysis of concrete injury for TCPA claims grounded in unwanted automated calls and texts.

31. The Eleventh Circuit has also recognized that wasted time can be a concrete harm. Losch v. Nationstar Mortg. LLC, 995 F.3d 937, 943–44 (11th Cir. 2021).

32. Plaintiff alleges that forty-five prerecorded calls and three automated texts intruded upon his peace and quiet, wasted his time, and caused aggravation and stress over a period of more than three years. Am. Compl. ¶ 33.

33. That is more than sufficient at the pleading stage.

5

34. Defendant further suggests there is no concrete harm because the calls were "informational" and because Plaintiff initially hung up without listening.

35. But the TCPA's privacy interest is in preventing the unwanted automated intrusion itself, not in policing message content or forcing consumers to listen to every second of a prerecorded message before they may claim injury.

36. Plaintiff alleges he eventually began listening to the messages, discovered they were garbage-delay notices, and that many were delivered after his garbage had already been picked up. Am. Compl. ¶¶ 22–23.

37. These allegations comfortably establish injury-in-fact at this stage.

## B. Defendant's Consent Arguments Misstate the TCPA Framework and Are Contradicted by Defendant's Own Sworn Discovery Responses.

38. The TCPA provision at issue here, 47 U.S.C. § 227(b)(1)(A)(iii), makes it unlawful to place any call to "any telephone number assigned to a cellular telephone service" using an artificial or prerecorded voice without the "prior express consent of the called party."

39. Plaintiff's claim arises under § 227(b)(1)(A)(iii), not under the separate do-not-call provisions of § 227(c).

40. Prior express consent operates as an exception on which Defendant bears the burden, not an element Plaintiff must plead around. See Grant v. Capital Mgmt. Servs., L.P., 449 F. App'x 598, 600 n.1 (9th Cir. 2011).

41. Affirmative defenses cannot be resolved on a motion to dismiss unless they appear conclusively on the face of the complaint. Quiller, 727 F.2d at 1069.

42. Plaintiff alleges that he "never provided prior express consent for Defendant to place artificial or prerecorded voice calls to his cellular telephone," and that Defendant has acknowledged in discovery that it cannot identify any document, recording, or other evidence constituting Plaintiff's consent to receive such calls or texts. Am. Compl. ¶¶ 9, 24, 30.

43. Accepting those allegations as true, the consent defense cannot defeat the FAC at the pleading stage.

44. Defendant's consent theory rests on the premise that Plaintiff provided his phone number for service-related communications.

45. Yet Defendant has not identified when, how, or to whom Plaintiff supposedly provided that number.

46. Defendant has admitted it possesses no signed consent document, no audio recording of consent, and no document or recording evidencing Plaintiff's consent. Am. Compl. ¶¶ 9, 24.

47. That is not a conclusive affirmative defense; it is speculation, and it cannot support dismissal under Rule 12(b)(6).

48. Defendant also cites 47 C.F.R. § 64.1200(a)(3)(iii) for the proposition that informational calls require no consent.

49. That regulation is inapplicable for two independent reasons.

50. First, § 64.1200(a)(3)(iii) by its own terms governs prerecorded calls to "any residential line" and creates a narrow exemption for certain categories of prerecorded calls to residential landlines.

7

51. It does not govern prerecorded calls to cellular telephone numbers, which are addressed separately and exclusively by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii).

52. Plaintiff's telephone number is a cellular telephone number, as alleged in the FAC and reflected in Defendant's own records. Am. Compl. ¶¶ 8, 18–20, 27–29.

53. The residential-line exception in § 64.1200(a)(3)(iii) is therefore inapplicable on its face.

54. Second, § 64.1200(a)(3)(iii) implements a different portion of the TCPA—47 U.S.C. § 227(c)—which concerns residential do-not-call regulations, not the automated-call restrictions in § 227(b).

55. Defendant cannot transplant a regulatory exemption issued under § 227(c) to defeat a claim arising under § 227(b)(1)(A)(iii), which contains its own distinct and exclusive exceptions: emergency calls and prior express consent.

56. Defendant's reliance on § 64.1200(a)(3)(iii) therefore fails because it governs a different statutory section and a different class of telephone lines.

57. Defendant also invokes the FCC's 2016 Declaratory Ruling on prior express consent for public utility companies. In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 31 F.C.C. Rcd. 9054 (2016).

58. That ruling does not apply here and, even if it did, would not establish consent.

59. First, FCC 16-88 was issued in response to petitions filed by Edison Electric Institute and the American Gas Association, associations representing electric power and natural gas utilities.

60. The FCC grounded its analysis in the unique public-safety implications of power outages, gas leaks, and interruptions to essential utility services, and stated that it was "narrowly tailoring" relief "to the set of calls before us."

61. Republic Services is a private, for-profit solid waste contractor, not an electric, gas, or water utility.

62. Defendant cites no authority extending FCC 16-88 to private trash haulers.

63. Second, even as to actual utility companies, the ruling limits consent to calls closely related to the utility service, such as outage warnings, restoration updates, meter work, and safety notices.

64. Routine garbage pickup delay notifications are not analogous to power-outage warnings or gas-leak alerts.

65. Third, FCC 16-88 explicitly places the burden of proving consent on the caller.

66. Here, Defendant has admitted under oath that it possesses no signed consent document, no audio recording of consent, and no document, recording, or other evidence of Plaintiff's consent to receive prerecorded calls. Am. Compl. ¶¶ 9, 24, 30.

67. Defendant cannot invoke a ruling that requires it to prove consent when its own discovery responses confirm it has no such proof.

68. Fourth, FCC 16-88 expressly preserves the right of consumers to revoke consent "in any reasonable manner that clearly expresses a desire not to receive further messages," consistent with Schweitzer v. Comenity Bank, 866 F.3d 1273, 1278 (11th Cir. 2017).

9

69. Even if FCC 16-88 applied, Plaintiff's written revocation would still be effective.

70. In short, the FCC ruling offers no support for Defendant's consent defense.

71. Defendant's verified interrogatory responses, signed under penalty of perjury on May 18, 2026, describe its calling process as follows: "Upon learning that the trash collection route on which Mr. Hartman lives would be delayed, a Republic Services employee would record a message explaining the delay to all residents on the delayed route. Republic Services would then send that recorded message to its third-party service provider, Call-Em-All, for transmission to all residents on the delayed route."

72. This sworn admission confirms that calls were transmitted to all residents on a route simultaneously, with no individualized consent review for any specific customer prior to placing any call.

73. Defendant further admitted under oath that it possesses no signed consent document, no audio recording of consent, and no document showing Plaintiff ever withdrew his revocation. Am. Compl. ¶¶ 9, 24, 30.

74. Defendant denied RFA 51—which asked it to admit that it cannot identify the specific date on which Plaintiff provided consent—thereby asserting that it can identify that date, yet it has never produced it.

75. A defendant that claims it can identify the date of consent but produces no evidence of it has not carried its burden.

10

76. Defendant's sworn interrogatory response describing its consent theory—that Plaintiff provided consent "through Hernando County"—is hedged twice with the phrase "upon information and belief."

77. Having relied on "upon information and belief" in its own verified discovery responses to describe a supposed consent theory, Defendant cannot credibly argue that Plaintiff's allegations are too speculative at the pleading stage.

78. At minimum, consent is a disputed factual issue that cannot be resolved in Defendant's favor on a Rule 12 motion.

## C. The First Amended Complaint Is Not Conclusory; It Is Supported by Specific Factual Allegations Confirmed by Defendant's Own Admissions.

79. Defendant next argues that Plaintiff's allegations regarding prerecorded calls are conclusory.

80. The FAC, coupled with Defendant's own admissions, shows otherwise.

81. The FAC alleges specific facts establishing the prerecorded and automated nature of the calls.

82. When Plaintiff answered the calls, there was no human on the line, but rather a prerecorded message. Am. Compl. ¶ 8.

83. Defendant's own call log production confirms that calls were placed using an automated notification system that sent mass "blast" calls to multiple customers simultaneously. Am. Compl. ¶ 10.

84. The call log contains entries such as "NEW YEARS CALL BLAST," "CHRISTMAS 2023 CALL EM ALL ANNOUNCEMENT," and

11

"MONDAY-THURSDAY CUSTOMERS END OF CONTRACT MESSAGE"—
Defendant's own terminology describing automated blast campaigns directed to
Plaintiff's number.

85. Defendant admitted in discovery that it used prerecorded messages to notify
customers of service delays, that an employee recorded a message transmitted to
customers on affected routes, and that at least one call to Plaintiff delivered a
prerecorded message. Am. Compl. ¶ 21.

86. Defendant's sworn interrogatory response confirms the mechanism: a recorded
message was sent to a third-party vendor for simultaneous delivery to all customers on
a route, without individualized human review.

87. Plaintiff further alleges that Defendant sent three text messages to his cellular
telephone using an automated messaging system, and that each was transmitted
automatically rather than individually composed and manually sent. Am. Compl. ¶ 20.

88. These allegations—grounded in Plaintiff's experience, Defendant's records, and
Defendant's sworn admissions—are the opposite of conclusory.

89. The cases Defendant cites, including McGinity v. Tracfone Wireless, Inc., 5 F.
Supp. 3d 1337 (M.D. Fla. 2014), and Weaver v. Wells Fargo Bank N.A., 2015 WL
4730572 (M.D. Fla. Aug. 10, 2015), involved bare legal conclusions about an automatic
telephone dialing system with no factual support.

90. In McGinity, the plaintiff merely alleged that calls were made "by use of an
automatic telephone dialing system," without describing the call content, whether the

12

messages were identical, or any other circumstances that would support an inference of automation.

91. In Weaver, the court explained that allegations such as a pause upon answering, identical messages across calls, or other indicia of automation would have sufficed.

92. Here, Plaintiff alleges the very kinds of facts Weaver identified as sufficient: no live person on the line, uniform prerecorded messages, mass "blast" campaigns reflected in the logs, and admissions confirming the use of a prerecorded notification system.

93. Weaver therefore explains why Plaintiff's allegations are sufficient, not why they fail.

94. There is also a dispositive legal distinction: McGinity and Weaver addressed allegations about ATDS equipment that consumers cannot directly observe.

95. A prerecorded or artificial voice, by contrast, is self-evident the moment the call is answered.

96. When Plaintiff answered Defendant's calls, there was no live person—only a prerecorded message playing automatically. Am. Compl. ¶ 8.

97. A consumer does not infer a prerecorded voice; he hears it.

98. The pleading standards applied in ATDS cases do not undermine a claim based on the prerecorded-voice prong of § 227(b)(1)(A)(iii).

99. Courts in this District have recognized that claims based on use of an artificial or prerecorded voice are independently actionable from claims based on use of an

ATDS. See Brown v. Ocwen Loan Servicing LLC, No. 8:18-cv-136-T-60AEP, 2019 WL 4221718, at *4 (M.D. Fla. Sept. 5, 2019).

100. Plaintiff's claim rests on the prerecorded-voice prong alone.

101. Finally, Defendant repeatedly characterizes the calls as "informational" as though that provides a defense.

102. It does not.

103. Section 227(b)(1)(A)(iii) makes it unlawful to make any call using an artificial or prerecorded voice to a cellular telephone other than a call made for emergency purposes or made with the prior express consent of the called party.

104. The statute contains exactly two exceptions: emergency calls and prior express consent.

105. Informational purpose is not one of them.

**D. Plaintiff's Revocation Was Clear, Unambiguous, and Legally Effective.**

106. Defendant argues that Plaintiff's Cease and Desist Letter was ineffective because it referenced "collection calls."

107. That argument is contradicted by the letter's plain language, binding Eleventh Circuit authority, and Defendant's own conduct.

108. The letter stated: "Stop calling me. Do not call me at any number, for any reason." Am. Compl. ¶ 12.

109. "Do not call me at any number, for any reason" does not distinguish among call types; it revokes consent to all calls, for any reason, to any number.

110. No reasonable reading confines that language to collection calls.

14

111. The Eleventh Circuit held in Schweitzer v. Comenity Bank that TCPA consent may be revoked "in any reasonable manner." 866 F.3d at 1278.

112. A written letter mailed by U.S. Priority Mail with tracking, bearing Plaintiff's full name, home address, and account number, and containing an unequivocal directive to stop all calls for any reason is unquestionably reasonable. Am. Compl. ¶ 11.

113. Plaintiff was not required to use Defendant's Call-Em-All opt-out mechanism or any method preferred by Defendant.

114. Whatever Plaintiff believed about the precise nature of the calls at the time he sent the letter, he expressly directed Defendant not to call him "at any number, for any reason."

115. Defendant admits it had the technical ability to stop calls and texts to Plaintiff after receiving the letter. Am. Compl. ¶ 30.

116. Yet it did not do so.

117. Defendant's own conduct confirms it received and understood the letter.

118. On October 11, 2024—eleven days after delivery—a representative of Defendant called Plaintiff at the same telephone number that is the subject of this lawsuit and acknowledged receiving Plaintiff's letter. Am. Compl. ¶ 15.

119. Defendant cannot plausibly claim the letter was too ambiguous to constitute effective revocation when its own representative called to acknowledge it and Defendant then continued to place prerecorded calls and send automated texts for more than a year. Am. Compl. ¶¶ 15, 19–20, 32.

120. Defendant's reliance on In re Runyan, 530 B.R. 801 (Bankr. M.D. Fla. 2015), is also misplaced.

121. Runyan and similar cases evaluated informal oral revocations made during live telephone calls.

122. Plaintiff's revocation was not an off-hand verbal comment; it was a written letter with identifying information and an explicit directive to stop all calls.

123. A written letter saying "Do not call me at any number, for any reason" is at least as express and clear as the oral statements courts have found sufficient.

124. Plaintiff's revocation was clear, unambiguous, reasonable, and legally effective.

**E. The First Amended Complaint Plausibly Alleges Willful or Knowing Violations Sufficient to Support Treble Damages.**

125. Defendant argues that Plaintiff has not adequately alleged willful violations to support treble damages.

126. The FAC alleges that Defendant could not produce any document, recording, or other evidence of Plaintiff's consent; had no policies, procedures, or training materials governing consent, revocation, or do-not-call designations; operated a mass blast-call system with no individualized consent review; admitted it had the ability to stop calls after September 30, 2024; and produced no documents showing any internal action taken in response to Plaintiff's Cease and Desist Letter. Am. Compl. ¶¶ 24, 30, 32.

16

127. The FAC further alleges that Defendant continued to call Plaintiff's cell phone using an artificial or prerecorded voice at least seventeen times, and to send three automated texts, after receiving his Cease and Desist Letter directing it not to call him "at any number, for any reason." Am. Compl. ¶¶ 11–13, 19–20, 32.

128. The Eleventh Circuit has held that the TCPA's willfulness standard requires only that "the violator know he was performing the conduct that violates the statute." Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir. 2015).

129. Here, Defendant's knowledge is apparent from its own admissions.

130. Defendant admits it had the ability to stop calls to Plaintiff after September 30, 2024, that it never flagged Plaintiff's number as do-not-call, and that it took no steps to prevent further calls after receiving the revocation letter. Am. Compl. ¶¶ 30, 32.

131. Defendant's own representative called Plaintiff eleven days after receiving the letter to acknowledge it. Am. Compl. ¶ 15.

132. Defendant then continued placing prerecorded calls and sending automated texts for more than a year.

133. A defendant who knows it has received a written revocation, acknowledges that revocation, admits it has the ability to stop calls, and then continues making prerecorded calls and sending automated texts to a cellular telephone knows it is performing the conduct that violates the statute.

134. At a minimum, whether Defendant's continued use of prerecorded calls and automated texts after written revocation was willful or knowing is a fact question that cannot be resolved on a motion to dismiss.

17

## IV. CONCLUSION

135. Defendant has filed a motion substantively identical to one which was already mooted, recycling arguments that have only grown weaker in light of discovery conducted since March 24, 2026.

136. Defendant's own sworn admissions establish that no consent document exists, no audio recording of consent exists, calls were transmitted by blast to all customers on a route without individualized review, and Defendant's own representative acknowledged receiving Plaintiff's revocation letter eleven days after delivery.

137. Defendant's regulatory citation—47 C.F.R. § 64.1200(a)(3)(iii)—applies to residential lines, not cellular telephones, and has no bearing on Plaintiff's § 227(b)(1)(A)(iii) claim.

138. The First Amended Complaint states a plausible claim for relief under 47 U.S.C. § 227(b)(1)(A)(iii), supported by specific factual allegations confirmed by Defendant's own discovery responses.

139. The Motion to Dismiss should be denied in its entirety.

140. In the alternative, if the Court identifies any pleading deficiency, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

Richard Hartman, Plaintiff
8285 Nuzum Rd
Weeki Wachee, FL 34613
rickhartman@myyahoo.com
727-200-7248

18

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2026 I hand-delivered a true copy of the forgoing to the Court. Once received by the Court and filed, all attorneys and parties of record will be notified of the filing via the CM/ECF system.

Richard Hartman, Plaintiff

19

## INDEX OF EXHIBITS

Plaintiff Richard Hartman submits the following exhibits in support of Plaintiff's Response to Defendant's Motion to Dismiss Amended Complaint

### Exhibit A

Cease & Desist Letter sent to Defendant dated September 23, 2024, mailed September 25, 2024 and delivered to Defendant September 30, 2024 at 1:06 PM, including photo of stamped envelope at the Post Office Counter, receipt for mailing and proof of delivery.

### Exhibit B

Defendant's Call Log submitted in response to Plaintiff's Request for Production No. 1, also referenced in Defendant's Interrogatory Response Number 2.

### Exhibit C

Screen Shots of three automated text messages sent to Plaintiff by Defendant, denied in Plaintiff's RFAs dated 10/09/2024 and 10/10/2024.

### Exhibit D

Defendant's Answers and Objections to Plaintiff's First Request for Production.

### Exhibit E

Defendant's Answers and Objections to Plaintiff's First Interrogatories.

### Exhibit F

Defendant's Responses and Objections to Plaintiff's First Request for Production

### Exhibit G

Screen shot of incoming call from Republic Services representative who called to discuss the Cease & Desist Letter, and then Plaintiff's return call 10 minutes later.

### Exhibit H

Example of Apple transcript for pre-recorded Voice Message delivered to Plaintiff by Defendant on 10/21/2024

Respectfully submitted,

Richard Hartman
Plaintiff, pro se

# Exhibit "A"

September 23, 2024
Richard Hartman
8285 Nuzum Rd
Brooksville, FL 34613
Account # 307620068210

Republic Services
18500 N. Allied Way
Phoenix, AZ 85054

To whom it may concern,

I have been getting collection calls from you, which I believe to be a mistake. I do not have any outstanding balances with you.

Stop calling me. Do not call me at any number, for any reason.

Sincerely,

Richard Hartman



## UNITED STATES POSTAL SERVICE.

SPRING HILL
8501 PHILATELIC DR
SPRING HILL, FL 34606-9998
(800)275-8777

09/25/2024                          10:25 AM

| Product | Qty | Unit Price | Price |
|---|---|---|---|

Priority Mail®          1                    $9.85
Window FR Env
  Phoenix, AZ 85054
  Flat Rate
  Expected Delivery Date
    Fri 09/27/2024
  Tracking #:
    9505 5152 2868 4269 7389 33
  Insurance                              $0.00
    Up to $100.00 included
Total                                    $9.85

Grand Total:                             $9.85

Credit Card Remit                        $9.85
  Card Name: VISA
  Account #: XXXXXXXXXXXX3533
  Approval #: 025919
  Transaction #: 530
  AID: A0000000031010          Chip
  AL: VISA CREDIT
  PIN: Not Required

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm
or call 1-800-222-1811

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.

or call 1-800-410-7420.

UFN: 111128-0131
Receipt #: 840-53350171-3-9242190-2
Clerk: 22



Archive USPS Tracking Plus™ Statement
As of December 5, 2025

Tracking Number: 9505515228684269738933
Destination Address: 18500 N Allied Way

| Date & Time | Status of Item | Location |
|---|---|---|
| Sep 25, 2024 10:24 am | ACCEPT OR PICKUP | 346069998 |
| Sep 25, 2024 4:18 pm | DEPART POST OFFICE | 346069998 |
| Sep 25, 2024 10:22 pm | PROCESSED THROUGH USPS FACILITY | TAMPA, FL 33605 |
| Sep 25, 2024 10:22 pm | MAIL PIECE NESTED TO CONTAINER | |
| Sep 25, 2024 10:30 pm | CONTAINER CLOSE | TAMPA, FL 33605 |
| Sep 26, 2024 6:22 pm | IN TRANSIT TO NEXT FACILITY | |
| Sep 27, 2024 6:22 pm | IN TRANSIT TO NEXT FACILITY | |
| Sep 28, 2024 6:22 pm | IN TRANSIT TO NEXT FACILITY | |
| Sep 29, 2024 6:22 pm | IN TRANSIT TO NEXT FACILITY | |
| Sep 30, 2024 2:35 am | PROCESSED THROUGH USPS FACILITY | PHOENIX, AZ 85043 |
| Sep 30, 2024 2:35 am | MAIL PIECE NESTED TO CONTAINER | |
| Sep 30, 2024 3:34 am | CONTAINER CLOSE | PHOENIX, AZ 85043 |
| Sep 30, 2024 6:15 am | ARRIVE USPS FACILITY | 850509998 |
| Sep 30, 2024 6:50 am | ARRIVE USPS FACILITY | PHOENIX, AZ 85050 |
| Sep 30, 2024 6:51 am | DISTRIBUTION | PHOENIX, AZ 85050 |
| Sep 30, 2024 9:09 am | ARRIVAL AT UNIT | PHOENIX, AZ 85050 |
| Sep 30, 2024 1:06 pm | DELIVERED | PHOENIX, AZ 85054 |

# Exhibit

# "B"

| AccountID | BroadcastName | Username | PhoneNumber | ContactDate |
|---|---|---|---|---|
| 639263 | MONDAY-THURSDAY CUSTOMERS END OF CONTRACT MESSAGE | jraposo@republic | 7272007248 | 2025-12-10 17:11:25.250 |
| 639263 | HERN 522,519,526,524,545,539,529,540,528,541,527 | jraposo@republic | 7272007248 | 2025-08-25 17:58:03.523 |
| 639263 | DELAYED ROUTES 526,540,554 08.14.25 | danacortez | 7272007248 | 2025-08-14 17:08:56.610 |
| 639263 | DELAYED ROUTES 05.19.25 | danacortez | 7272007248 | 2025-05-19 16:00:13.117 |
| 639263 | DELAYED TRASH ROUTES  04.07.25 | danacortez | 7272007248 | 2025-04-07 17:03:22.023 |
| 639263 | DELAYED ROUTES 539,541,519,545,536,540 02.18.25 | danacortez | 7272007248 | 2025-02-17 16:38:10.370 |
| 639263 | ROUTE DELAY 1524 2.17.25 | danacortez | 7272007248 | 2025-02-17 16:21:00.203 |
| 639263 | DELAYED RTS 518,521,528,541,545,540,519 12.26.24 | danacortez | 7272007248 | 2025-01-26 15:11:06.003 |
| 639263 | Rt 519,524,525,528,529,536,537,538,539,540,541,545 | klovenick | 7272007248 | 2024-12-30 16:09:27.170 |
| 639263 | DELAYED RTS 518,521,528,541,545,540,519 12.26.24 | danacortez | 7272007248 | 2024-12-26 15:53:49.567 |
| 639263 | DELAYED ROUTES | danacortez | 7272007248 | 2024-12-23 17:06:20.080 |
| 639263 | HERN ROUTE DELAY MULTI ROUTES 12.2.24 | jraposo@republic | 7272007248 | 2024-12-02 15:29:58.207 |
| 639263 | HERN #1545,1540,1539,1519,1528,1534,1524,1537,1541 | klovenick | 7272007248 | 2024-10-21 17:53:54.703 |
| 639263 | ALL ROUTES DELAYED 10-14-24 DUE TO STORM | jraposo@republic | 7272007248 | 2024-10-14 16:22:20.310 |
| 639263 | HURRICANE MILTON 10.10.24 DIVISON CLOSED | jraposo@republic | 7272007248 | 2024-10-08 15:23:07.467 |
| 639263 | HURRICANE MILTON 10.9 DIVISON CLOSED | jraposo@republic | 7272007248 | 2024-10-07 16:00:14.520 |
| 639263 | HERN YW ROUTES 10.2.24 | klovenick | 7272007248 | 2024-10-02 17:57:22.527 |
| 639263 | HERN #1519,522,524,528,536,537,539,540,541,544,545 | klovenick | 7272007248 | 2024-09-23 16:39:09.447 |
| 639263 | HC 519,525,528,529,537,539,540,541,543,544,545,549 | klovenick | 7272007248 | 2024-09-09 17:04:05.803 |
| 639263 | HERN 519,537,539,540,541,544,545 8.26.24 | klovenick | 7272007248 | 2024-08-26 14:37:58.557 |
| 639263 | HERN #1528,1536,1537,1539,1540,1541,1545 8.19.24 | klovenick | 7272007248 | 2024-08-19 15:11:42.607 |
| 639263 | HERN 538,540,541,537,524,545,546 | klovenick | 7272007248 | 2024-08-12 15:55:36.710 |
| 639263 | DELAYED TRASH ROUTES 541,518,528,544 07.29.24 | danacortez | 7272007248 | 2024-07-29 17:35:30.980 |
| 639263 | DELAYED TRASH ROUTES 545,541,536 07.22.24 | danacortez | 7272007248 | 2024-07-22 18:56:09.317 |
| 639263 | HERNANDO: MULTIPLE ROUTES DELAYED | klovenick | 7272007248 | 2024-07-08 15:10:19.030 |
| 639263 | HERN 1541,1546,519,537,523,525,548,544,534 4.29.24 | klovenick | 7272007248 | 2024-04-29 14:21:13.447 |
| 639263 | HERN 1519, 1528, 1532, 1541, 1544 & 1546 | jraposo@republic | 7272007248 | 2024-04-01 17:00:56.187 |
| 639263 | HERN #1544, 1546, 1541, 1519, 1545, 1538 | klovenick | 7272007248 | 2024-03-18 18:00:48.390 |
| 639263 | HERN 541, 546, 544, 554, 555, 533, 537 3.4.24 | klovenick | 7272007248 | 2024-03-04 16:48:55.040 |
| 639263 | NEW YEARS CALL BLAST | klovenick | 7272007248 | 2023-12-29 11:53:22.250 |
| 639263 | HERN 4538, 4540, 4541, 4543, 4544, 4545 | klovenick | 7272007248 | 2023-12-28 15:08:55.020 |
| 639263 | CHRISTMAS 2023 CALL EM ALL ANNOUNCEMENT | jraposo@republic | 7272007248 | 2023-12-22 12:54:40.817 |
| 639263 | HERN# 526, 542, 525, 541, 532, 540, 529 &524 11/27 | jraposo@republic | 7272007248 | 2023-11-27 18:41:41.130 |

| | | | |
|---|---|---|---|
| 639263 | HERN 4552, 4554 , 4556 9-7-23 | jraposo@republic 7272007248 | 2023-09-07 16:50:08.827 |
| 639263 | HERN 1518, 1548, 1557, 1541 8-28-23 | jraposo@republic 7272007248 | 2023-08-28 17:19:21.467 |
| 639263 | HURRICANE IDALIA 8.29 8.30 | jraposo@republic 7272007248 | 2023-08-28 15:42:57.737 |
| 639263 | HERN 4554 & 4556 7-13-23 | jraposo@republic 7272007248 | 2023-07-13 18:32:15.703 |
| 639263 | HERN 1541 06-26-23 | abeharry@republ 7272007248 | 2023-06-26 18:39:08.013 |
| 639263 | HERN 1541 6-19-23 | jraposo@republic 7272007248 | 2023-06-19 18:13:29.730 |
| 639263 | HERN 1541 6-12-23 | jraposo@republic 7272007248 | 2023-06-12 16:44:12.220 |
| 639263 | HERN 4554 5-4-23 | jraposo@republic 7272007248 | 2023-05-04 17:27:55.243 |
| 639263 | HERN 1537, 1541 AND 1546 | jraposo@republic 7272007248 | 2023-03-27 18:43:14.803 |
| 639263 | HURRICANE NICOLE 2022 RESI & COMM | jraposo@republic 7272007248 | 2022-11-09 17:22:02.793 |
| 639263 | HURRICANE IAN 2022 | jraposo@republic 7272007248 | 2022-09-27 16:19:58.910 |
| 639263 | HERN 541-543-542 7-7-22 | jraposo@republic 7272007248 | 2022-07-07 18:42:12.527 |
| 639263 | HERN 1541 6-20-22 | jraposo@republic 7272007248 | 2022-06-20 10:41:47.347 |

| Method | AudioMessageLe |
|--------|---------------:|
| Voice | 56 |
| Voice | 31 |
| Voice | 20 |
| Voice | 20 |
| Voice | 20 |
| Voice | 22 |
| Voice | 21 |
| Voice | |
| Voice | 26 |
| Voice | 22 |
| Voice | 21 |
| Voice | 35 |
| Voice | 24 |
| Voice | 22 |
| Voice | 102 |
| Voice | 99 |
| Voice | 25 |
| Voice | 26 |
| Voice | 25 |
| Voice | 25 |
| Voice | 23 |
| Voice | 26 |
| Voice | 21 |
| Voice | 21 |
| Voice | 24 |
| Voice | 26 |
| Voice | 30 |
| Voice | 24 |
| Voice | 23 |
| Voice | 47 |
| Voice | 24 |
| Voice | 53 |
| Voice | 31 |

| | |
|---|---|
| Voice | 32 |
| Voice | 35 |
| Voice | 108 |
| Voice | 30 |
| Voice | 29 |
| Voice | 31 |
| Voice | 31 |
| Voice | 29 |
| Voice | 30 |
| Voice | 80 |
| Voice | 111 |
| Voice | 33 |
| Voice | 32 |

# Exhibit

# "C"



2:52

82907 >

Text Message
Yesterday 9:34 AM

Republic Services:
Due to severe
weather, your solid
waste service at
8285 NUZUM RD
is delayed. We
apologize for the
inconvenience and
will provide your
service as soon as
safely possible.
Stay safe and we
will see you soon!
Reply YES to
receive periodic

 Text Message

3:15



82907 ›

waste service at 8285 NUZUM RD is delayed. We apologize for the inconvenience and will provide your service as soon as safely possible. Stay safe and we will see you soon! Reply YES to receive periodic message updates on your services. Reply STOP to Cancel. Msg&Data rates may apply.

Text Message



2:52

82907 >

Today 7:40 AM

Republic Services: Due to severe weather, your solid waste service at 8285 NUZUM RD is delayed. We apologize for the inconvenience and will provide your service as soon as safely possible. Stay safe and we will see you soon! Reply YES to receive periodic message updates

Text Message



**3:15**

**82907** >

weather, your solid waste service at 8285 NUZUM RD is delayed. We apologize for the inconvenience and will provide your service as soon as safely possible. Stay safe and we will see you soon! Reply YES to receive periodic message updates on your services. Reply STOP to Cancel. Msg&Data rates may apply.

Text Message

3:29



82907 >

Republic Services: Due to severe weather, you have multiple notifications for several services. Log into your RepublicServices.-com account for details. Click the notification bell at the top of the screen. If you have multiple accounts, please click Switch Account on the Dashboard page.

8:01 AM

 Text Message

3:31



82907 >

...screen. If you have multiple accounts, please click Switch Account on the Dashboard page. We apologize for the inconvenience and will provide your services as soon as safely possible. Reply YES to receive periodic message updates on your services. Reply STOP to Cancel. Msg&Data rates may apply.

8:01 AM

+    Text Message

# Exhibit

# "D"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RICHARD HARTMAN,

Plaintiff,                                  Case No. 5:25-cv-790-PRL

v.

REPUBLIC SERVICES OF
FLORIDA, LIMITED
PARTNERSHIP d/b/a REPUBLIC
SERVICES OF TAMPA,

Defendant.

_____ /

**DEFENDANT'S ANSWERS AND OBJECTIONS
TO PLAINTIFFS' FIRST REQUESTS FOR ADMISSION**

Defendant, Republic Services of Florida, LP ("Republic Services"), pursuant to

Federal Rule of Civil Procedure 36, hereby answers Plaintiff, Richard Hartman's, First

Requests for Admission.

**OBJECTIONS APPLICABLE TO MULTIPLE REQUESTS**

A.      Republic Services objects to Mr. Hartman's definition of "Defendant" as

overbroad. The definition includes Republic Services and any "parents, subsidiaries,

agents, employees, contractors, dialing vendors, and any person acting on its behalf."

But here, Mr. Hartman sues just Republic Services, not any parents, subsidiaries, or

any other third party. Further, the inclusion of any "agents, employees, … and any

person acting on its behalf," is not limited in any reasonable scope, and necessarily

includes Republic Services' entire business operation, regardless of whether it involves

phone calls. Pursuant to this objection, Republic Services is responding to these Requests on its own behalf.

B.    Republic Services objects to Mr. Hartman's instruction that "If a Request is denied in whole or part, state all facts upon which the denial is based," as outside the scope of discovery. Federal Rule of Civil Procedure 36 does not state that a party is required to state any facts; rather, a party is only required to admit or deny the Request as stated.

### ANSWERS TO REQUESTS FOR ADMISSION

1.    **Admit Defendant maintained a customer account for Plaintiff in 2022, 2023, 2024 and 2025.**

    RESPONSE:    Admitted.

2.    **Admit Defendant's Records reflect a Telephone Number associated with Plaintiff's account in 2022, 2023, 2024 and 2025.**

    RESPONSE:    Admitted.

3.    **Admit Defendant placed Calls to the Telephone Number in 2022.**

    RESPONSE:    Admitted that Defendant instructed Text-em-All, Inc. ("Text-em-All") to place certain calls—made for a commercial purpose, and not including or introducing an advertisement or constituting telemarketing—to Plaintiff in 2022. Otherwise, denied.

4.    **Admit Defendant placed Calls to the Telephone Number in 2023.**

    RESPONSE:    Admitted that Defendant instructed Text-em-All to place certain calls—made for a commercial purpose, and not including or introducing an advertisement or constituting telemarketing—to Plaintiff in 2023. Otherwise, denied.

2

**5.    Admit Defendant placed Calls to the Telephone Number in 2024.**

RESPONSE:    Admitted that Defendant instructed Text-em-All to place certain calls—made for a commercial purpose, and not including or introducing an advertisement or constituting telemarketing—to Plaintiff in 2024. Otherwise, denied.

**6.    Admit Defendant placed Calls to the Telephone Number in 2025.**

RESPONSE:    Admitted that Defendant instructed Text-em-All to place certain calls—made for a commercial purpose, and not including or introducing an advertisement or constituting telemarketing—to Plaintiff in 2025. Otherwise, denied.

**7.    Admit Defendant sent Text Messages to the Telephone Number in 2022.**

RESPONSE:    Denied.

**8.    Admit Defendant sent Text Messages to the Telephone Number in 2023.**

RESPONSE:    Denied.

**9.    Admit Defendant sent Text Messages to the Telephone Number in 2024.**

RESPONSE:    Denied.

**10.    Admit Defendant sent Text Messages to the Telephone Number in 2025.**

RESPONSE:    Denied.

**11.    Admit Defendant received Plaintiff's Revocation Letter dated September 25, 2024.**

RESPONSE:    Denied.

**12.    Admit Defendant received the Revocation Letter on or about September 30, 2024.**

RESPONSE:    Denied.

13. **Admit the Revocation Letter stated: "Stop calling me."**

    RESPONSE:    Denied.

14. **Admit the Revocation Letter stated: "Do not call me at any number, for any reason."**

    RESPONSE:    Denied.

15. **Admit that after September 30, 2024, Defendant was aware Plaintiff did not wish to receive further Calls.**

    RESPONSE:    Denied.

16. **Admit Defendant did not send Plaintiff written confirmation that Calls and Text Messages would cease.**

    RESPONSE:    Admitted.

17. **Admit Defendant had the ability to stop Calls and Text Messages to Plaintiff after September 30, 2024.**

    RESPONSE:    Admitted.

18. **Admit Defendant placed a Call to Plaintiff on July 22, 2024 at approximately 7:27 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

19. **Admit Defendant placed a Call to Plaintiff on July 29, 2024 at approximately 6:26 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

20. **Admit Defendant placed a Call to Plaintiff on August 12, 2024 at approximately 4:33 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

21. **Admit Defendant placed a Call to Plaintiff on August 19, 2024 at approximately 3:31 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

4

22. **Admit Defendant placed a Call to Plaintiff on August 26, 2024 at approximately 3:04 PM.**

   RESPONSE:    Admitted as to the date. Denied as to the time.

23. **Admit Defendant placed a Call to Plaintiff on September 9, 2024 at approximately 5:35 PM.**

   RESPONSE:    Admitted as to the date. Denied as to the time.

24. **Admit Defendant placed a Call to Plaintiff on September 23, 2024 at approximately 5:15 PM.**

   RESPONSE:    Admitted as to the date. Denied as to the time.

25. **Admit Defendant placed a Call to Plaintiff on October 2, 2024 at approximately 6:30 PM.**

   RESPONSE:    Admitted as to the date. Denied as to the time.

26. **Admit Defendant placed a Call to Plaintiff on October 7, 2024 at approximately 4:26 PM.**

   RESPONSE:    Admitted as to the date. Denied as to the time.

27. **Admit Defendant placed a Call to Plaintiff on October 8, 2024 at approximately 3:32 PM.**

   RESPONSE:    Admitted as to the date. Denied as to the time.

28. **Admit Defendant placed a Call to Plaintiff on October 14, 2024 at approximately 4:34 PM.**

   RESPONSE:    Admitted as to the date. Denied as to the time.

29. **Admit Defendant placed a Call to Plaintiff on October 21, 2024 at approximately 6:29 PM.**

   RESPONSE:    Admitted as to the date. Denied as to the time.

30. **Admit Defendant placed a Call to Plaintiff on December 2, 2024 at approximately 4:10 PM.**

   RESPONSE:    Admitted as to the date. Denied as to the time.

31. **Admit Defendant placed a Call to Plaintiff on December 26, 2024 at approximately 4:19 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

32. **Admit Defendant placed a Call to Plaintiff on January 27, 2025 at approximately 2:52 PM.**

    RESPONSE:    Denied.

33. **Admit Defendant placed a Call to Plaintiff on February 17, 2025 at approximately 4:58 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

34. **Admit Defendant placed a Call to Plaintiff on April 7, 2025 at approximately 5:52 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

35. **Admit Defendant placed a Call to Plaintiff on May 19, 2025 at approximately 4:47 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

36. **Admit Defendant placed a Call to Plaintiff on August 14, 2025 at approximately 5:43 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

37. **Admit Defendant placed a Call to Plaintiff on August 25, 2025 at approximately 6:25 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

38. **Admit Defendant placed a Call to Plaintiff on December 10, 2025 at approximately 5:31 PM.**

    RESPONSE:    Admitted as to the date. Denied as to the time.

39. **Admit Defendant sent a Text Message to Plaintiff on October 9, 2024.**

    RESPONSE:    Denied.

6

40. **Admit Defendant sent a Text Message to Plaintiff on October 10, 2024.**

RESPONSE:     Denied.

41. **Admit Defendant sent a second Text Message to Plaintiff on October 10, 2024.**

RESPONSE:     Denied.

42. **Admit the Text Messages referenced above were sent after Defendant received the Revocation Letter.**

RESPONSE:     Denied.

43. **Admit Defendant used Prerecorded Messages to notify customers of service delays.**

RESPONSE:     Admitted.

44. **Admit that when Defendant placed Calls delivering Prerecorded Messages to Plaintiff, such Prerecorded Messages began playing without a live agent speaking first.**

RESPONSE:     Admitted that a Republic Services employee recorded messages that certain garbage collections would be late on a particular day, and that message was transmitted to customers on the affected route. Otherwise, Republic services cannot determine what Mr. Hartman is asking Republic Services to admit, so denied.

45. **Admit Defendant used a dialing system capable of delivering Prerecorded Messages in 2022, 2023, 2024 and 2025.**

RESPONSE:     Denied.

46. **Admit the dialing system used had the capacity to place Calls to multiple customers.**

RESPONSE:     Denied.

7

47.    Admit at least one Call Defendant placed to Plaintiff delivered a Prerecorded Message.

RESPONSE:    Admitted.

48.    Admit Calls Defendant placed to Plaintiff after September 30, 2024 were not emergency Calls.

RESPONSE:    Denied.

49.    Admit Defendant does not possess a document signed by Plaintiff expressly consenting to receive Prerecorded Messages.

RESPONSE:    Admitted.

50.    Admit Defendant does not possess an audio recording of Plaintiff consenting to receive Prerecorded Messages.

RESPONSE:    Admitted.

51.    Admit Defendant cannot identify a specific date Plaintiff provided express consent to receive Prerecorded Messages.

RESPONSE:    Denied.

52.    Admit Defendant did not obtain Plaintiff's express consent to place Calls or send Text Messages after September 30, 2024.

RESPONSE:    Denied.

53.    Admit Defendant contends Plaintiff's status as a customer constituted consent for the Calls and Text Messages at issue.

RESPONSE:    Admitted that Mr. Hartman provided his consent to receive calls and text messages from Republic Services when he provided his phone number, through Hernando County, in connection with Republic Services' collection of his garbage as a public utility.

8

54. **Admit Defendant maintains Records identifying each Call placed to Plaintiff.**

    RESPONSE:    Denied.

55. **Admit Defendant maintains Records identifying each Text Message sent to Plaintiff.**

    RESPONSE:    Denied.

56. **Admit Defendant continued placing Calls after receiving the Revocation Letter.**

    RESPONSE:    Denied.

57. **Admit Defendant cannot identify any document in which Plaintiff withdrew his revocation of consent.**

    RESPONSE:    Admitted.

## CERTIFICATE OF SERVICE

I hereby certify that this document was via email to the parties and counsel on the below Service List.

Date: May 11, 2026        Respectfully submitted,

GUNSTER, YOAKLEY & STEWART, P.A.

*/s/ Ryan C. Childress*

**Jonathan K. Osborne, Esq.**
Florida Bar No. 95693
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
(954) 462-2000
josbourne@gunster.com
rbelons@gunster.com
malbrecht@gunster.com

**Melanie B. Senosiain, Esq.**
Florida Bar No. 118904
401 East Jackson Street, Suite 1500

Tampa, Florida 33602
(813) 228-9080
msenosiain@gunster.com
gmurphy@gunster.com

**Ryan C. Childress, Esq.**
Florida Bar No. 1049623
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
(561) 655-1980
rchildress@gunster.com
mmargolese@gunster.com
eservice@gunster.com

*Attorneys for Defendant, Republic Services*
*of Florida, Limited Partnership*

## SERVICE LIST

**Richard Hartman**
8285 Nuzum Road
Brooksville, Florida 34613
(727) 200-7248
rickhartman@myyahoo.com

*Plaintiff (pro se)*

10

# Exhibit

# "E"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RICHARD HARTMAN,

      Plaintiff,

                                    Case No. 5:25-cv-790-PRL

v.

REPUBLIC SERVICES OF
FLORIDA, LIMITED
PARTNERSHIP d/b/a REPUBLIC
SERVICES OF TAMPA,

      Defendant.

_____/

## DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFFS' FIRST INTERROGATORIES

Defendant, Republic Services of Florida, LP ("Republic Services"), pursuant to

Federal Rule of Civil Procedure 33, hereby answers Plaintiff, Richard Hartman's, First

Interrogatories.

## OBJECTIONS APPLICABLE TO MULTIPLE REQUESTS

A.     Republic Services objects to Mr. Hartman's definition of "Defendant" as

overbroad. The definition includes Republic Services and any "parents, subsidiaries,

agents, employees, contractors, dialing vendors, and any person acting on its behalf."

But here, Mr. Hartman sues just Republic Services, not any parents, subsidiaries, or

any other third party. Further, the inclusion of any "agents, employees, … and any

person acting on its behalf," is not limited in any reasonable scope, and necessarily

includes Republic Services' entire business operation, regardless of whether it involves

phone calls. Pursuant to this objection, Republic Services is responding to these Requests on its own behalf.

## ANSWERS TO REQUESTS FOR ADMISSION

1.      **Identify every telephone number associated with Plaintiff's account from January 1, 2022 to the present.**

RESPONSE:      (727) 200-7248.

2.      **State the total number of Calls placed to Plaintiff from January 1, 2022 to the present, and identify the date and time of each Call.**

RESPONSE:      Pursuant to Federal Rule of Civil Procedure 33(c), Republic Services opts to produce business records, and refers Mr. Hartman to the spreadsheet produced in response to Request for Production No. 1.

3.      **State the total number of Text Messages sent to Plaintiff from January 1, 2022 to the present, and identify the date and time of each Text Message.**

RESPONSE:      None.

4.      **Identify the specific dialing system or systems used to place each Call to Plaintiff from January 1, 2022 to the present.**

RESPONSE:      Republic Services is not aware of the system or systems used to place any call to Plaintiff. Republic Services retains a third-party vendor, Call-Em-All, Inc. ("Call-Em-All"), to make such calls, and that vendor maintains proprietary software.

5.      **Describe in detail how any prerecorded or artificial voice Calls placed to Plaintiff were generated and transmitted, including whether such Calls were automatically triggered, initiated by a live person, or initiated by any automated system.**

RESPONSE:      Upon learning that the trash collection route on which Mr. Hartman lives would be delayed, a Republic Services employee would record a

2

message explaining the delay to all residents on the delayed route. Republic Services would then send that recorded message to its third-party service provider, Call-Em-All, for transmission to all residents on the delayed route.

6.    **Identify all persons who participated in, authorized, directed, processed, or had responsibility for placing Calls or sending Text Messages to Plaintiff, or who have knowledge of how such Calls or Text Messages were generated, transmitted, or recorded, including any third-party vendors or contractors, and for each person identified state:**

   **a. full name**

   **b. employer**

   **c. job title**

   **d. job responsibilities**

RESPONSE:

- Corporate Representative, Call-Em-All, Inc., 3803 Parkwood Boulevard, Suite 900, Frisco, Texas, 75034.

- Operations Supervisor, Republic Services of Florida, Limited Partnership, c/o Undersigned counsel.

7.    **Describe Defendant's policies and procedures in effect from January 1, 2022 to the present for handling revocation of consent, including how revocations are recorded, processed and implemented in Defendant's calling or messaging systems.**

RESPONSE:    Republic Services retained Call-Em-All to handle consent in its calling systems. Upon information and belief, Republic Services answers as follows: For each call made to Mr. Hartman, Call-Em-All automatically included an opt-out option for Mr. Hartman to stop receiving calls from Republic Services. Call-Em-All maintains a file of any opt-out requests made by Mr. Hartman. There is no record of any such opt-out request from Mr. Hartman.

3

**8. State the date Defendant first recorded receipt of Plaintiff's September 25, 2024 Revocation Letter.**

RESPONSE:    Republic Services never received any such letter from Mr. Hartman.

**9.    Describe all facts supporting Defendant's contention that Plaintiff provided prior express consent to receive the Calls and/or Text Messages at issue.**

RESPONSE:    Upon information and belief, when Mr. Hartman became a resident of Hernando County, he provided his phone number to county officials responsible for providing Mr. Hartman with garbage collection service. Upon information and belief, Mr. Hartman granted his express consent to Republic Services, through Hernando County, to receive calls or text messages relating to his garbage collection services.

**10.    Identify all documents supporting Defendant's claim that Plaintiff consented to receive the Calls and Text Messages at issue.**

RESPONSE:    Pursuant to Federal Rule of Civil Procedure 33(c), Republic Services opts to produce business records, and refers Mr. Hartman to the documents produced in response to Request for Production No. 23.

**11.    State all facts supporting Defendant's contention that it did not violate the Telephone Consumer Protection Act with respect to the Calls and Text Messages at issue, and identify all documents and persons supporting such contention.**

RESPONSE:    Republic Services objects to this as a "contention interrogatory," which are "generally improper." *See* M.D. Fla. Disco. H'book, § C.2.

**12.    Identify all persons with knowledge of the telephone dialing systems, prerecorded message systems, or text messaging systems used by Defendant to place**

4

Calls or send Text Messages to Plaintiff from January 1, 2022 to the present, and for each person identified, state:

      a. full name

      b. employer

      c. job title

      d. job responsibilities

      e. whether the person has knowledge of how Calls or Text Messages were generated or transmitted to Plaintiff

RESPONSE:      Corporate Representative, Call-Em-All, Inc., 3803 Parkwood Boulevard, Suite 900, Frisco, Texas, 75034.

13.      Identify the person or persons most knowledgeable regarding Defendant's policies and procedures for obtaining consent and processing revocation of consent for telephone calls and text messages, and for each person identified, state:

      a. full name

      b. employer

      c. job title

      d. job responsibilities

RESPONSE:      Corporate Representative, Call-Em-All, Inc., 3803 Parkwood Boulevard, Suite 900, Frisco, Texas, 75034.

5

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true.

Date: _____5/18/2026_____

**For Republic Services:**

_Adis Latic_
_____
**Adis Latic,** Authorized Representative

**As to objections:**

Date: May 11, 2026

Respectfully submitted,

GUNSTER, YOAKLEY & STEWART, P.A.

_/s/ Ryan C. Childress_
_____
**Jonathan K. Osborne, Esq.**
Florida Bar No. 95693
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
(954) 462-2000
josbourne@gunster.com
rbelons@gunster.com
malbrecht@gunster.com

**Melanie B. Senosiain, Esq.**
Florida Bar No. 118904
401 East Jackson Street, Suite 1500
Tampa, Florida 33602
(813) 228-9080
msenosiain@gunster.com
gmurphy@gunster.com

**Ryan C. Childress, Esq.**
Florida Bar No. 1049623
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
(561) 655-1980

6

rchildress@gunster.com
mmargolese@gunster.com
eservice@gunster.com

*Attorneys for Defendant, Republic Services*
*of Florida, Limited Partnership*

## CERTIFICATE OF SERVICE

I hereby certify that this document was via email to the parties and counsel on

the below Service List.

/s/ Ryan C. Childress
**Ryan C. Childress, Esq.**

## SERVICE LIST

**Richard Hartman**
8285 Nuzum Road
Brooksville, Florida 34613
(727) 200-7248
rickhartman@myyahoo.com

*Plaintiff (pro se)*

7

# Exhibit "F"

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

RICHARD HARTMAN,

      Plaintiff,

v.

REPUBLIC SERVICES OF
FLORIDA, LIMITED
PARTNERSHIP d/b/a REPUBLIC
SERVICES OF TAMPA,

      Defendant.

Case No. 5:25-cv-790-PRL

_____/

## DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION

Defendant, Republic Services of Florida, LP ("Republic Services"), pursuant to Federal Rule of Civil Procedure 34, hereby responds and objects to Plaintiff, Richard Hartman's, First Requests for Production.

## OBJECTIONS APPLICABLE TO MULTIPLE REQUESTS

A.     Republic Services objects to Mr. Hartman's definition of "Defendant" as overbroad. The definition includes Republic Services and any "parents, subsidiaries, agents, employees, contractors, dialing vendors, and any person acting on its behalf." But here, Mr. Hartman sues just Republic Services, not any parents, subsidiaries, or any other third party. Further, the inclusion of any "agents, employees, … and any person acting on its behalf," is not limited in any reasonable scope, and necessarily includes Republic Services' entire business operation, regardless of whether it involves phone calls. Pursuant to this objection, Republic Services is responding to these

Requests on its own behalf, and will produce only documents within its possession, custody, or control.

## RESPONSES AND OBJECTIONS

**1.    All call detail records reflecting Calls placed to Plaintiff from January 1, 2022 to the present.**

RESPONSE:    Republic Services will produce any non-privileged documents within its possession, custody, or control that are responsive to this Request.

**2.    All records reflecting Text Messages sent to Plaintiff from January 1, 2022 to the present.**

RESPONSE:    None.

**3.    All account notes, logs, or internal records relating to Calls or Text Messages placed to Plaintiff.**

RESPONSE:    Republic Services objects to this Request on the ground that it is vague. Republic Services does not know what Plaintiff means when he asks for "account notes, logs, or internal records." Plaintiff is invited to meet and confer to explain what he means.

**4.    All documents reflecting the date and time of each Call or Text Message placed to Plaintiff.**

RESPONSE:    Republic Services will produce any non-privileged documents within its possession, custody, or control that are responsive to this Request.

5.    **All audio recordings of Calls placed to Plaintiff.**

RESPONSE:    Republic Services will produce any non-privileged documents within its possession, custody, or control that are responsive to this Request.

6.    **All prerecorded messages that may have been delivered to Plaintiff, including message files or scripts.**

RESPONSE:    Republic Services will produce any non-privileged documents within its possession, custody, or control that are responsive to this Request.

7.    **All documents sufficient to identify the content of any prerecorded message delivered to Plaintiff.**

RESPONSE:    Republic Services will produce any non-privileged documents within its possession, custody, or control that are responsive to this Request.

8.    **All documents pertaining to the opening of Plaintiff's account, and any changes to the account since the account was opened.**

RESPONSE:    Republic Services objects to this Request on the ground that it is vague and overbroad. First, because of the nature of Plaintiff's allegations, Republic Services interprets "Plaintiff's account" to mean any records pertaining to Republic Service's record of phone numbers associated with Plaintiff and his garbage collection services. As understood, Republic Services answers as follows: None.

Second, Plaintiff's request for all documents "pertaining to" his account, this is no different from a request seeking documents "relating to" his account. And "[a]

3

request for all documents 'relating to' a subject is usually subject to criticism as overbroad since ... all documents 'relate' to all others in some remote fashion. Such a request thus unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request." *TIC Park Centre 9, LLC v. Cabot*, 2017 WL 3034547, at *5 (S.D. Fla. July 18, 2017) (citing *Carter v. Archdale Police Dep't*, 2014 WL 1774471, at *5 (M.D.N.C. May 2, 2014)) (omission in original).

Plaintiff is invited to meet and confer to clarify or narrow the scope of this Request.

**9.    All documents Defendant contends constitute Plaintiff's consent to receive Calls or Text Messages.**

RESPONSE:    Republic Services is still diligently searching for documents, and Republic Services will produce any non-privileged documents within its possession, custody, or control that are responsive to this Request.

**10.    All documents reflecting any revocation of consent by Plaintiff.**

RESPONSE:    None.

**11.    All documents reflecting receipt or processing of Plaintiff's September 25, 2024 Revocation Letter.**

RESPONSE:    None.

**12.    All documents reflecting when Plaintiff's account was coded as "Do Not Call" or similar designation.**

RESPONSE:    None.

4

13.    All policies and procedures in effect from January 1, 2022 to the present relating to:

a. telephone calls to customers

b. prerecorded or artificial voice messages

c. text messaging

d. obtaining consent

e. processing revocation of consent

RESPONSE:    None.

14.    All training materials used to instruct employees regarding consent, revocation, or telephone communications with customers.

RESPONSE:    None.

15.    Documents sufficient to identify all telephone dialing systems used to place Calls to Plaintiff.

RESPONSE:    None.

16.    Documents sufficient to identify all systems used to send Text Messages to Plaintiff.

RESPONSE:    None.

17.    All contracts or agreements with third-party vendors used to place Calls or send Text Messages to Plaintiff.

RESPONSE:    Republic Services objects to this Request on the ground that it seeks confidential information. Upon entry of a confidentiality agreement between Republic Services and Plaintiff, and after Republic Services finishes its diligent search for documents, and Republic Services will produce any non-privileged documents within its possession, custody, or control that are responsive to this Request.

5

**18.    All user manuals, specifications, or detailed descriptions of dialing or messaging systems used to contact Plaintiff.**

RESPONSE:    None.

**19.    All internal correspondence or communications relating to Plaintiff's Revocation Letter.**

RESPONSE:    None.

**20.    All internal correspondence or communications relating to Calls or Text Messages placed to Plaintiff.**

RESPONSE:    Republic Services objections to this request on the ground that it is overbroad. "A request for all documents 'relating to' a subject is usually subject to criticism as overbroad since ... all documents 'relate' to all others in some remote fashion. Such a request thus unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request." *TIC Park Centre 9, LLC v. Cabot*, 2017 WL 3034547, at *5 (S.D. Fla. July 18, 2017) (citing *Carter v. Archdale Police Dep't*, 2014 WL 1774471, at *5 (M.D.N.C. May 2, 2014)) (omission in original). Plaintiff's request for documents "relating to Calls or Text Messages placed to Plaintiff" does not place any meaningful limit on the types of documents Plaintiff might be seeking, and unfairly shifts the burden of discovery from Plaintiff to Republic Services.

**21.    All documents reflecting any complaint, investigation, or review relating to Plaintiff.**

RESPONSE:    Other than the Complaint for Damages [D.E. 1] in this action, none.

6

**22.    All documents supporting Defendant's contention that it did not violate the Telephone Consumer Protection Act.**

RESPONSE:    Republic Services is still diligently searching for documents, and Republic Services will produce any non-privileged documents within its possession, custody, or control that are responsive to this Request.

**23.    All documents supporting Defendant's contention that Plaintiff consented to receive the Calls or Text Messages at issue.**

RESPONSE:    Republic Services is still diligently searching for documents, and Republic Services will produce any non-privileged documents within its possession, custody, or control that are responsive to this Request.

Date: May 11, 2026                    Respectfully submitted,

GUNSTER, YOAKLEY & STEWART, P.A.

/s/ Ryan C. Childress
**Jonathan K. Osborne, Esq.**
Florida Bar No. 95693
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
(954) 462-2000
josbourne@gunster.com
rbelons@gunster.com
malbrecht@gunster.com

**Melanie B. Senosiain, Esq.**
Florida Bar No. 118904
401 East Jackson Street, Suite 1500
Tampa, Florida 33602
(813) 228-9080
msenosiain@gunster.com
gmurphy@gunster.com

**Ryan C. Childress, Esq.**
Florida Bar No. 1049623
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401

7

(561) 655-1980
rchildress@gunster.com
mmargolese@gunster.com
eservice@gunster.com

*Attorneys for Defendant, Republic Services
of Florida, Limited Partnership*

## CERTIFICATE OF SERVICE

I hereby certify that this document was via email to the parties and counsel on

the below Service List.

*/s/ Ryan C. Childress*
**Ryan C. Childress, Esq.**

## SERVICE LIST

**Richard Hartman**
8285 Nuzum Road
Brooksville, Florida 34613
(727) 200-7248
rickhartman@myyahoo.com

*Plaintiff (pro se)*

8

# Exhibit

# "G"



ATLANTA NORTHEAST, GA

## +1 (678) 442-5529

**October 11, 2024**

12:24 PM **Outgoing Call**
44 seconds

12:14 PM **Incoming Call** ☑
26 seconds

Calls with a checkmark have been

 Favorites   Recents   Contacts   Keypad   Voicemail

# Exhibit

# "H"

6:32

 

## +1 (727) 233-3...

Hudson, FL

October 21, 2024 at 6:29 PM

0:00                                    −0:25

       

## Transcription

"Good evening this is Republic services calling in reference to your trash service for today October 2 1, 2 0 2 4 our drivers currently running behind if we are unable to service your container today our

                        
Favorites   Recents   Contacts   Keypad   Voicemail